UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAEDON MICHELLE KUTS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-02323 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born June 7, 1982, applied on October 23, 2012 for SSI, alleging disability beginning May 30, 2011. Administrative Transcript ("AT") 192-194. Plaintiff alleged she was unable to work due to migraines, arm problems, and depression. AT 126. In a decision dated

////

////

1

April 13, 2015, the ALJ determined that plaintiff was not disabled.[1]  AT 18-29.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since May 30, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: right cubital tunnel syndrome; carpal tunnel syndrome (right) status post-surgery; bilateral overuse syndrome; mild carpal tunnel syndrome (left); migraines; and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except she can frequently push and pull with the upper extremities. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally handle and finger with upper extremities. She can have no more than occasional typing on a keyboard. She can understand, remember, and carry out simple job instructions. She can maintain concentration, persistence, and pace for simple job tasks. She can interact appropriately with supervisors, coworkers, and the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on June 7, 1982 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2011, through the date of this decision.

AT 20-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical evidence; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ improperly rejected lay witness testimony; and (4) the ALJ's hypothetical question to the vocational expert was invalid.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

Plaintiff argues that the ALJ improperly rejected findings by three physicians: Dr. Gerald Dericks, a medical examiner; Dr. Chester Sunde, a consultative psychological examiner; and Dr. Phaedra Caruso-Radin, a state agency physician.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester , 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Dericks

In an October 17, 2013 report, Dr. Dericks opined that plaintiff "should avoid any prolonged and/or repetitive use of the bilateral hands. She should avoid lifting, carrying, pushing and pulling more than 20 pounds. She should refrain from repetitive and/or prolonged gripping, grasping, twisting, and activities requiring fine manipulation." At 467. Dr. Dericks repeated these recommendations in a June 19, 2014 report. AT 509. In both reports, Dr. Dericks opined that plaintiff was not capable of performing her usual and customary job as a hair stylist. AT 467, 510.

The ALJ found Dr. Dericks's "opinion regarding the lifting and carrying requirements as well as manipulative limitations . . . largely consistent with the medical evidence" and gave it "great weight." AT 26. However, the ALJ found that Dr. Dericks's opinion that plaintiff would be incapable of performing past work as a hair stylist was "an issue reserved to the Commissioner and given little weight." AT 26.

Plaintiff contends that the ALJ's RFC finding that plaintiff could "occasionally handle and finger with upper extremities" was inconsistent with Dr. Derick's finding that she "should refrain from repetitive and/or prolonged gripping, grasping, twisting, and activities requiring fine manipulation." However, the ability to "occasionally" perform tasks is consistent with an RFC requirement to "refrain from repetitive and/or prolonged" performance of those tasks. The court finds no error in the weighing of Dr. Derick's opinion.

2. Dr. Sunde

Dr. Sunde examined plaintiff on January 2, 2014. He diagnosed her with posttraumatic stress disorder, major depression, and maladaptive personality traits, finding that her "presentation is consistent with somebody who has suffered severe abuse, is suffering from depression and possible associative symptoms." AT 482-486. In a functional assessment, Dr. Sunde opined that plaintiff showed moderate to marked impairment in her abilities to interact appropriately with supervisors, coworkers, and the public; comply with job rules, safety, and attendance; and respond to change in a normal workplace setting, all due to "severe anxiety and depressed mood." AT 485. He also opined that she showed marked impairment in the ability to maintain persistence and pace in a normal workplace setting. AT 485.

The ALJ discounted these findings, writing:

> Dr. Sunde had an opportunity to examine the claimant but his opinion is inconsistent with the medical evidence. The claimant has a very minimal treatment history for her depression and the record indicates that she does relatively well with medications. Further, as discussed above in Dr. Caruso-Radin's opinion, the claimant's social limitation is no more than mild. Moreover, the claimant's mental status examinations are largely unremarkable. The claimant is alert, cooperative, and oriented. She denies having any suicidal or homicidal ideations. She is able to spell the word 'world' forwards and backwards and her delayed recall is intact. [Record cites.] Dr. Sunde's opinion is overly restrictive and inconsistent with the largely unremarkable mental status examinations and the claimant's reported activities of daily living. The undersigned gives it little weight.

AT 27.

In support of this finding, the ALJ cited Dr. Sunde's January 2014 evaluation of plaintiff (AT 482-486); medical progress notes from a county clinic from 2012 through 2014 (AT 539-

6

553); and 2014 psychiatric notes from Dr. Andrada at a county health agency (AT 585-586). Dr. Sunde found that plaintiff's speech was linear, she was "overall" a reliable informant, and her orientation, fund of knowledge, abstract thinking, and judgment were normal. AT 484-485. At the clinic where plaintiff was seen for minor health issues, doctors described her as "in no acute distress," "alert and pleasant," "normal affect," and "not tearful, but somewhat anxious." AT 539-553. Dr. Andrada found plaintiff oriented, alert, with normal affect, appearance, and attitude. AT 586. However, her speech was slow, her thought process fragmented, and her thought content contained hallucinations and delusions. AT 586.

The ALJ also cited plaintiff's "minimal treatment history for depression" and a record of improving on medication. Lexapro and Cymbalta were noted to improve her mood in 2006 (AT 303, 305, 318), and 2012 medical notes indicate Cymbalta was "working well" (AT 549). The ALJ cited state agency reviewing physician Dr. Caruso-Radin, who opined that plaintiff was "moderately limited" in the ability to interact with the general public, accept instructions, and respond to criticism from supervisors, but not significantly limited in other social functions. AT 100-101. The ALJ also cited plaintiff's activities of daily living, including "taking care of her child, taking care of her cat, driving, and going grocery shopping." AT 21. As to social functioning, plaintiff had frequent contact with her friends and mother-in-law, was able to go shopping and to doctor appointments, and interacted with customers as a hair stylist. AT 21. The ALJ found her mildly limited in this area. AT 21; see AT 26-27.

Plaintiff argues that the ALJ failed to provide legally adequate reasons for rejecting Dr. Sunde's opinion, which if credited would establish that plaintiff could only have limited contact with supervisors, coworkers, and the public, restricting her ability to perform the two jobs identified by the vocational expert. See AT 63-64 (VE testifies that added limitation of "no public contact and occasional coworker contact" would eliminate available jobs). Defendant argues that the ALJ properly rejected Dr. Sunde's opinion as unsupported by the record. See Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") Here, the ALJ reasonably concluded that the marked limitations

in social functioning and other work-related abilities found by Dr. Sunde lacked support in clinical findings and the overall record.

### 3. Dr. Caruso-Radin

As with Dr. Sunde, plaintiff argues that the ALJ improperly rejected the reviewing physician's finding of moderate social limitations as "inconsistent with the record." AT 27. As above, the ALJ cited plaintiff's social contacts, daily activities, and testimony that she did not attend social events "due to her migraines," as opposed to depression and anxiety. AT 27; see AT 48. As above, the ALJ supplied legally sufficient reasons for rejecting this finding of moderate social limitations.

## B. Credibility

Plaintiff argues that the ALJ erred in finding her not fully credible. AT 23. On this subject, the ALJ wrote:

> She testified that she has a burning sensation in her fingers, hands, and arms. She testified that she has pain and numbness in her hands and fingers. She alleges that she experiences 9-15 migraines a month, which can last up to 72 hours. She alleges that she gets anxiety and panic attacks when she receives phone calls or texts. These panic attacks occur daily and last up to five hours. . . . The objective findings contained in the record, however, do not fully support her statements.

AT 23, 24.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication,

8

treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ cited evidence that plaintiff had "a normal gait, normal sensation, normal musculature, no joint deformities or abnormalities, and normal range of motion for all four extremities." AT 24; see AT 355-372, 494-515, 517-528, 554-582. The ALJ also cited plaintiff's testimony that she could routinely lift up to 25 pounds. AT 24; see AT 44. The ALJ found that plaintiff's "treatment record does not support the [claimed] frequency and severity of her migraines" and cited reports that medication helped with her migraines. AT 24-25; see AT 470-473 (noting "generally good relief" with triptans), 489-92 (noting effective migraine medications, including triptans and Celexa). The ALJ found that plaintiff's claimed daily panic attacks lasting up to five hours were not supported by treatment records, and that her "ability to perform activities of daily living" suggested that her pain was not as limiting as claimed. AT 25.

Plaintiff points to medical records noting 8 to 10 migraines per month in 2005 and 2006. AT 314, 322 (noting nine headaches "over past 2 months"), 334. However, these reports were

made several years before the alleged May 2011 onset date, while the records cited by the ALJ were made during the alleged period of disability. Plaintiff also avers that her conservative treatment history was due to financial limitations rather than non-severe impairments.

Because the ALJ used the proper process and provided proper reasons for finding plaintiff less than fully credible, the undersigned defers to her determination.

### C. Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the testimony of plaintiff's mother-in-law Loren Gerhung, who completed a third-party function report describing plaintiff's limitations. AT 229-237. The ALJ considered Ms. Gerhung's report, but gave it little weight "to the extent that it indicates the claimant's inability to perform work under this residual functional capacity for the same reasons that the claimant's subjective complaints are not fully credible." AT 27.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Plaintiff argues that the ALJ's credibility determination as to Ms. Gerhung was improper for the same reasons the credibility determination as to plaintiff was improper. However, as set forth above, the undersigned finds no error in the ALJ's assessment of plaintiff's credibility. To the extent Ms. Gerhung's statements echoed plaintiff's subjective complaints, the ALJ did not err in assigning little weight to this lay testimony. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness).

### D. Vocational Expert

Lastly, plaintiff asserts that the ALJ erred by posing an incomplete hypothetical to the vocational expert, one that did not account for all of plaintiff's limitations. However, plaintiff

does not specify which limitations were omitted; nor does plaintiff challenge the RFC except for the arguments addressed above. Having considered plaintiff's substantive arguments, the court finds no reason to conclude that the hypothetical questions posed to the VE were improper.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted; and

3. Judgment is entered for the Commissioner.

Dated: February 22, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/ kuts2323.ssi.ckd